RENDERED: MAY 17, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

ORDERED PUBLISHED: JULY 12, 2024; 10:00 A.M.

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0438-MR

RANDALL GOINS                  APPELLANT

v.          APPEAL FROM KENTON CIRCUIT COURT
HONORABLE MARY K. MOLLOY, JUDGE
ACTION NO. 22-CR-00457

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, GOODWINE, AND TAYLOR, JUDGES.

COMBS, JUDGE: This is a criminal case in which the Appellant, Randall Goins (Goins), appeals the denial of his motion to suppress. After our review, we affirm.

On May 5, 2022, Goins was indicted on one count of Wanton Endangerment, First Degree, and one count of Operating a Motor Vehicle Under the Influence (DUI).

On August 11, 2022, Goins filed a motion to suppress the results of a blood draw. Although he raised various issues in his motion to suppress, only the application and interpretation of KRS[1] 189A.105(4) are at issue on appeal. The statute provides that after a blood test is administered to a person arrested for a DUI offense, a police officer is required to inform an individual of the right to an independent blood test[2] and provides as follows:

> Immediately following the administration of the final test requested by the officer, the person shall again be informed of his or her right to have a test or tests of his or her blood performed by a person of his or her choosing described in KRS 189A.103 within a reasonable time of his or her arrest at the expense of the person arrested. He or she shall then be asked "Do you want such a test?" The officer shall make reasonable efforts to provide transportation to the tests.

*Id.* On October 28, 2022, the trial court conducted a suppression hearing. Kyle Shepard, a patrol officer with the City of Covington, testified.

On January 26, 2022, Officer Shepard was dispatched to investigate a non-responsive male subject slumped behind the wheel of a pickup truck. When Officer Shepard arrived, he found Goins slumped over and nonresponsive in the

---

[1] Kentucky Revised Statutes.

[2] "[A]n individual arrested for driving under the influence who has submitted to the initial test administered by the state is allowed an independent test to obtain another result to compare with or controvert the police officer's test." *Commonwealth v. Long*, 118 S.W.3d 178, 181 (Ky. App. 2003) (citations omitted). In order to assure that such individuals are aware of that right, our legislature requires the police to advise them of that right twice.

driver's seat. Officer Shepard positioned his cruiser with his push bumper against Goins's front bumper. Officer Shepard and another officer attempted to wake Goins up. When he became conscious, Goins hit the gas pedal and ran into the police cruiser. The officers managed to break the window of Goins's vehicle and found numerous beer cans inside. Goins was removed from his vehicle, placed in custody for DUI and wanton endangerment, and taken to the hospital.

Officer Shepard testified that he read the implied consent statute to Goins at the hospital and that Goins agreed to submit to the requested blood test. While Officer Shepard was preparing the kit for the blood draw, Goins asked for his phone to contact his wife. Officer Shepard recalled that Goins said that he wondered if he had just had a seizure. Officer Shepard went to retrieve Goins's phone and left him in custody of another officer. When Officer Shepard returned to the hospital room, Goins asked to call his wife, who wanted to speak with Officer Shepard about what had happened.

Officer Shepard testified that he did not immediately give Goins the second independent blood test warning following the blood draw by hospital staff. Asked what he was doing at that time, Officer Shepard explained that he was on the phone with Goins's wife, who strongly suspected that her husband may have had a seizure and was concerned he could have more. Officer Shepard agreed that additional medical testing could be needed. He was concerned for Goins's safety

and did not want to take Goins to jail if there was a chance that he could have another seizure.

Officer Shepard went to the nurse's station to ask about further testing (to determine if a seizure had occurred). Goins was moved to a different room on the other side of the emergency room where the additional medical testing was performed. At that point, Officer Shepard went back and read the statutory language to Goins, advising him for the second time that he had a right to an independent blood test. Officer Shepard testified that Goins declined wanting the independent test. Officer Shepard's body cam video was admitted into evidence, and portions were played during the suppression hearing. Officer Shepard testified that Goins shook his head "no" when asked if he wanted the independent test.

Asked why he had not read the statutory language sooner, Officer Shepard testified:

> So, with the conversation with the wife and with it becoming apparent that there was a strong possibility that he needed additional testing, looking back over it, I think I was just distracted by that. And when I walked back into the room and saw medical staff drawing blood, I remembered that I had to -- that I wasn't done with my portion of the implied consent, that there was still that last paragraph that I needed to read to him.

Officer Shepard testified that the delay was not due to a deliberate disregard on his part. No other witnesses testified at the suppression hearing.

On December 2, 2022, the trial court entered an Order denying

Goins's motion to suppress as follows:

> From a review of the entirety of the body cam of
> Officer Sheppard, [*sic*] the Defendant was told of his
> right to have a blood test of his own choosing shortly
> after his arrival at the . . . emergency room, at or near
> 43:59 on the officer's body cam. The Defendant first
> raised the possibility of a seizure at or about 53:00 on the
> body cam, which then lead to the officer speaking with
> the Defendant's wife by phone about the possibility of a
> seizure. Out of concern for the Defendant, Officer
> Sheppard [*sic*] inquired of hospital personnel about
> testing to confirm whether Mr. Goins had in fact had a
> seizure. From the time of taking of the initial blood
> sample (at or about 1:05:26 on the body cam) to when the
> Defendant was again read his right to have an
> independent blood test performed (at or about 1:42:42 on
> the body cam) was approximately 37 minutes. This time
> frame included what appeared to be an initial evaluation
> by the hospital personnel of Mr. Goins for a possible
> seizure. As a result of the initial evaluation for possible
> seizure, the Defendant was not transported to the
> detention center but rather remained at the hospital for
> additional treatment.

> Citing *Commonwealth v. Bedway*, 466 S.W.3d 468 (Ky. 2015)

(holding that suppression may be warranted if there was a violation of statutory

right which caused prejudice or if there was a deliberate disregard of the statute),

the trial court explained that:

> In the case at hand, there was no evidence to suggest that
> the arresting officer deliberately disregarded this
> statutory right, or that Mr. Goins was prejudiced as a
> result of the alleged statutory violation. While the officer
> did not **immediately** advise the Defendant of his right to

-5-

the independent test after the performance of the initial test due to the intervening concern about having a possible seizure, review of the officer's body cam in this case demonstrates that the Defendant was informed both before **and** after the initial blood draw that he had the right to his own test at his expense. Mr. Goins was specifically asked after the initial blood draw if he wanted such a test, and he shook his head "no." Even with the lapse of some thirty-seven minutes after the initial blood test, had the Defendant chosen to do so, the Court finds that performance of his own test would have taken place within a reasonable time after his arrest and after the initial test. Yet, when offered the opportunity for another test, the Defendant elected to forego it. Thus, the Court concludes that in the absence of prejudice or deliberate disregard of the statutory right to his own test, there is no basis to suppress the results of the initial blood test.

(Emphases original.)

Goins subsequently entered a conditional guilty plea pursuant to RCr[3] 8.09 and preserved his right to appeal the ruling on the motion to suppress. On March 30, 2023, the trial court entered Final Judgment and sentenced Goins to five years, probated for five years, for First-Degree Wanton Endangerment; and seven days, conditionally discharged for two years, for Driving Under the Influence First Offense. Goins then filed this appeal.

The standard of our review is two-fold. "In reviewing a trial court's decision to deny a motion to suppress evidence, we accept the trial court's findings

---

[3] Kentucky Rules of Criminal Procedure.

of fact as conclusive if they are supported by substantial evidence. We then review *de novo* the trial court's application of the law to those facts." *Commonwealth v. Reed*, 647 S.W.3d 237, 242-43 (Ky. 2022) (footnote omitted).

We address Goins's last argument first. At page 14 of his brief, Goins argues that the trial court was "clearly erroneous in its findings denying the Appellant's motion to suppress." Goins notes that he "did not respond either affirmatively or negatively once the second warning was finally read 35 minutes later" in conflict with the trial court's finding that "when offered the opportunity for another test, the Defendant elected to forego it." In support of his argument, Goins relies upon the following language in *Commonwealth v. Morgan*, 583 S.W.3d 432, 434 (Ky. App. 2019):

> KRS 189A.105(4) directs that the officer must give a second warning of the defendant's right to an independent test, and the statute requires a "yes" or "no" answer as to whether a defendant desires such a test.[4]

In the case before us, Goins's response was neither unclear nor equivocal. Officer Shepard's testimony at the suppression hearing established that

---

[4] Another panel of this Court addressed this very language in *Morgan* in an unpublished opinion, *Kinman v. Commonwealth*, No. 2022-CA-0601-MR, 2023 WL 2719221, at *2 (Ky. App. Mar. 31, 2023), determining it to be *dicta*. The *Kinman* Court specifically noted as follows:

> [The] specific answer . . . required to the question of "**Do you want such a test?**" is not stated in the statute, although this Court has stated in dicta the question calls for a yes or no answer. *Commonwealth v. Morgan*, 583 S.W.3d 432, 434 (Ky. App. 2019).

Goins declined the test and that he shook his head "no." Additionally, the trial court reviewed the body cam video. We agree with the Commonwealth that substantial evidence supports the trial court's findings that when offered the opportunity for an independent blood test, Goins elected to forego it.

We now turn to Goins's argument that his rights were violated because he was not "immediately" informed of his right to an independent blood test following the administration of the test requested by the officer. In reliance on *Bedway*, *supra*, the trial court concluded that in the absence of prejudice or the officer's deliberate disregard of Goins's statutory right to his own test, there was no basis to suppress the results of the initial blood test.

*Bedway* involved the statutory right to contact an attorney pursuant to KRS 189A.105(3). Our Supreme Court determined that the officer's refusal of the defendant's request to call his daughter in order to get the name of an attorney violated the defendant's statutory right -- but that suppression of the defendant's breathalyzer test results was not the appropriate remedy in that case.

Extending the rule in *Copley v. Commonwealth*, 361 S.W.3d 902 (Ky. 2012),[5] to a violation of the statutory mandate in KRS 189A.105, the Court in

---

[5] In *Copley*, our Supreme Court held that:

> [W]hen a criminal procedur[al] rule is violated but the defendant's constitutional rights are not affected, suppression may still be warranted if there is (1) prejudice to the defendant, in the sense that the search might

-8-

*Bedway* explained that "if the police deliberately disregard the mandate . . . or the defendant is prejudiced as a result of that deliberate disregard, *i.e.* the defendant might have refused the testing and thereby received a lesser sentence, evidence seized thereafter may be suppressed." *Bedway*, 466 S.W.3d at 477.

Both parties draw our attention to *Ward v. Commonwealth*, No. 2019-CA-1254-DG, 2021 WL 2021617 (Ky. App. May 21, 2021), citing RAP[6] 41(A)(3) that as an unpublished case, it is not binding authority. In *Ward*, the defendant asserted that KRS 189A.105(4) was violated by a 35-minute delay between the time the final test was administered at the hospital and when he was informed of his right to an independent blood test at the detention center. Citing *Copley*, *supra*, *and Bedway*, *supra*, another panel of this Court held "there is no need to determine whether Ward's statutory right under KRS 189A.105(4) was violated as no prejudice or deliberate disregard was demonstrated." *Ward*, 2021 WL 2021617, at *2.

Neither prejudice nor deliberate disregard was demonstrated in the case before us. Goins's arguments to the contrary are based upon conjecture. We agree with the trial court's sound reasoning "that in the absence of prejudice or

---

not have occurred or been so abusive if the rule had been followed or (2) if there is evidence of deliberate disregard of the rule.

*Id.* at 907 (footnote omitted).

[6] Kentucky Rules of Appellate Procedure.

deliberate disregard of the statutory right to his own blood test, there is no basis to suppress the results of the initial blood test."

Accordingly, we affirm the Order of the Kenton Circuit Court denying Goins's motion to suppress.

TAYLOR, JUDGE, CONCURS.

GOODWINE, JUDGE, CONCURS IN RESULT ONLY.

BRIEF FOR APPELLANT:

J. Tanner Duncan
Cincinnati, Ohio

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky